**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

Plaintiff,

vs.

STUBHUB, INC.
d/b/a www.stubhub.com,

Defendant.

---

**COMPLAINT**

---

COMES NOW Plaintiff Andres Gomez ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant StubHub, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

**INTRODUCTORY STATEMENT**

1. Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant's business.

2. Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3. When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4. This case arises out of the fact that Defendant StubHub, Inc. has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5. This action seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendants effectively and timely such that their access to Defendant's place of public accommodation (the www.stubhub.com website and the physical places of accommodation which the Website sells tickets to) is/are not impeded; as such impediment has rendered Defendant's business not fully accessible to the visually impaired.

6. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

7. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §

1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

8. This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

9. State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

10. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because Defendant StubHub, Inc. is conducting business within the jurisdiction of this court by virtue of the fact its www.stubhub.com website is ("Website") available to the general public within this district and the acts constituting the violation of the ADA occurred in this District.

11. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Juan Carlos Gil

12. Plaintiff Juan Carlos Gil (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA.

13. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff suffers optic nerve damage; as such, he is legally blind. Further, Juan Carlos Gil suffers from cerebral palsy, is unable to

walk and is confined to a wheelchair. Therefore, Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

14. Plaintiff Juan Carlos Gil is an athlete who travels for his athletic triathlon endeavors, and also is an advocate for the rights of blind and wheelchair bound disabled individuals (like himself). In the past year, Plaintiff has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[1], the American Counsel for the Blind convention in Nevada, and various focus groups and meetings throughout the east coast (including New York and Boston).

15. Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

**<u>StubHub, Inc.</u>**

16. Defendant StubHub, Inc. ("Defendant") is the owner and operator of the website www.stubhub.com ("Website") which sells seating to sports events and artistic performances and is thus directly connected to physical places of public accommodation[2], including (but not limited to) the Marlins Park (for Marlins baseball games), the Hard Rock Stadium (for football games), the American Airlines Arena (for musical performances and sporting events), and Jackie Gleason Theater (for various artistic and musical performances).

[1] July 2017
[2] Located in Miami-Dade county as well as other counties

17. In addition to selling seating tickets to events, Defendant offers the public the ability to re-sell their tickets to sporting events and artistic performances by offering a platform to upload tickets, add sales price, and re-sell those tickets thought its Website.

## FACTS

18. Plaintiff's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

19. Defendant StubHub, Inc. owns, controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.stubhub.com ("Website").

20. Defendant's Website permits the public to obtain formation regarding various places of public accommodation such as Marlins Park baseball stadium, the Hard Rock Stadium, or the Jackie Gleason Theater, which are defined as "Places of Public Accommodation" within meaning of Title III 42 U.S.C. §12181(7)(C) as "a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment."

21. Defendant's Website also permits the public to obtain formation regarding various places of public accommodation such as the Knight Concert Hall and the American Airlines Arena, which are defined as "Places of Public Accommodation" or within meaning of Title III 42 U.S.C. §12181(7)(D) as "an auditorium, convention center, lecture hall, or other place of public gathering."

22. For the places of public accommodation under 42 U.S.C. §§s 12181(7)(D) & (C), Defendant's Website provides those venue's schedule of sporting and

entertainment events, prices for the various seats at those events, and a seating chart that allows the user to view all available seating and pick specific seats for viewing the sporting and entertainment events.

23. Another function of the Website is to provide auxiliary aids and services for the disabled.

24. For all of the reasons as delineated hereinabove, clearly, Defendant's Website is an integral part of the provision of goods and services by the physical places of public accommodation under 42 U.S.C. §§s 12181(7)(D) & (C). By this nexus, Defendant's Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §§s 12181(7)(D) & (C) of the ADA[3].

25. Since Defendant's Website permits the public to purchase tickets to sporting and entertainment events as well as to purchase StubHub gift cards [4] from the Website (the gift card can be physically mailed as a "plastic card" to the desired recipient or e-mailed as an electronic gift card), the Website is also characterized as a sales establishment, which is a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(E).

26. The Defendant must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

---

[3] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

[4] https://stubhubstore.wgiftcard.com/responsive/personalize_responsive/chooseDesign/stubhub_responsive/1

27. At all times material hereto, Defendant was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public to purchase tickets to sporting and entertainment events Defendant held at physical places of public accommodation under 42 U.S.C. §§s 12181(7)(D) & (C), Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, §§s 12181(7)(D) & (C) and 28 C.F.R. §36.104(2). As such, Defendant has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[5]

28. Plaintiff is an individual who likes sporting and entertainment events and is interested in attending such events in local Miami venues such as offered through Defendant's Website.

29. Plaintiff attempted on several occasions to utilize Defendant's Website to educate himself as to the sporting and entertainment events offered therein, with the intent then going to such events to enjoy the entertainment.

30. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

31. The Defendant's business contains access barriers that prevent the Plaintiff and other visually impaired individuals using keyboards and screen reading software from free and full use of Defendant's Website.

---

[5] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

32. The Plaintiff attempted to locate an ***Accessibility Notice***[6] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with Defendant.

33. While Defendant addresses individuals with disabilities on its Website with respect to purchasing tickets for individuals confined to wheelchairs, and provides information on how the various physical Place(s) of Public Accommodation (which Defendant sells tickets/admissions to) accommodate individuals with disabilities related to wheelchair accessibility[7], the fact is that Defendant's Website is inaccessible to blind individuals. Therefore, despite Defendant's provision of *Notice of Accessibility* within its Website, Defendant's Website is inaccessible, and Plaintiff is unable to comprehend the Website.

34. The fact that Plaintiff could not communicate with Defendant left him excluded from accessing the sporting and entertainment events and left Plaintiff with the feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

35. The Plaintiff's inability to access and use accessible auxiliary aids and services has impeded and obstructed Plaintiffs ability to enjoy the goods and services at the various sporting and entertainment events in Miami. Plaintiff's inability to enjoy and learn about the sporting and entertainment events in Miami resulted in a "virtual"

---

[6] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

[7] See:
https://stubhub.custhelp.com/app/answers/detail/a_id/127/related/1/session/L2F2LzEvdGltZS8xNTA0MTU3MDM5L2dlbi8xNTA0MTU3MDM5L3NpZC9mVV9SdTdISXltN04xTWclN0VBU2N1VHolN0UwWU1HV1N0NDhCNlJDSEY1enB5bzZaciU3RU9xdyU3RVZzQTc3WEk3cm10bG1xekZNZ295a2IyTDBzYVV4Rm5SbXZBS2FwOWdnTlY1TUo1aG5CRWFaRldFdklleWlhTWtoeVllUSUyMSUyMQ%3D%3D

concrete barrier which has precluded Plaintiff's purchasing Defendant's goods and services. Plaintiff's inability to learn about the schedule of events, become educated as to the seating charts at each venue, to find out the various ticket prices and to purchase a ticket to sporting and entertainment events in Miami has hindered, impeded and inhibited Plaintiff's entry to those venues. Plaintiff has missed out on purchasing and enjoying Defendant's goods and services, and as such, Plaintiff has suffered particularized harm and suffered an injury in fact. Because Plaintiff cannot communicate with Defendant, Plaintiff has not had access to purchase tickets online for entry to sporting and entertainment events in order to enjoy those events as offered in Miami via Defendant's Website.

36. Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to the Miami based sporting and entertainment events offered through Defendant's Website in order to participate in the goods and services offered at those venues. Plaintiff's inability to communicate with / comprehend Defendant's Website has impeded Plaintiff's ability to patronize those sports and entertainment venues physical locations in Miami which tickets are available through Defendant's Website. As such, the Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

37. On information and belief, Defendant has not initiated an ADA policy to insure full and equal use of its business by individuals with disabilities.

38. On information and belief, Defendant has not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

39. On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

40. On information and belief, Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

41. On information and belief, Defendant has not instituted an Automated Accessibility Testing program.

42. On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

43. On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its Website, Applications, and Digital Assets accessible to the visually impaired community.

44. On information and belief, Defendant's Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[8].

---

[8] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

45. On information and belief, Defendant does not have an Axillary Aids and Services Accessibility Policy.

46. On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and Services.

47. On information and belief, Defendant has not offered any other credible from of Auxiliary Aids and Services other than its Website.

48. Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

49. Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

50. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the www.stubhub.com website.[9]

51. On information and belief, the Defendant is aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services, which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

---

[9] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

52. On information and belief, Defendant is aware of the need to provide full access to all visitors to the www.stubhub.com website which supports the various sporting and entertainment venues physical locations.[10]

53. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

54. Such barriers result in punishment and isolation of blind and low vision individuals from the rest of society.

55. According to the National Federation for the Blind[11], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

56. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

57. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

58. Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

---

[10] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)

[11] Statistics for 2012, see http://www.NFB.org/blindness-statistics

**Trespass Violations**

59. Plaintiff utilizes his personal computer to access websites such as the www.stubhub.com website. Plaintiff uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff stores his personal information and retains his browsing history on his personal computer.

60. Throughout the Website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

61. Defendant informs the Website user that the user's personal information and browsing history is collected is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its Website and commences to shop on that Website is subject to having his/her personal information conveyed to third parties. According to the Defendant's Website, those third parties include (but may not be limited to): (i) the Defendant's related affiliated companies (eBay Inc. and PayPal Inc. companies are so named) (ii) co-branded partners (without so naming their co-branded partners), (iii) third party service providers (including payment processors and financial institutions, but without so naming the service providers), (iv) to law enforcement officials (if so required to be transmitted by said law enforcement), (v) marketing partners (without so naming their marketing partners), and (vi) credit bureaus.

62. The Plaintiff was unable to comprehend the Website; therefore, Plaintiff has/had no choice (and therefore no knowledge) of Defendant's installation of software and collection of the website user's browsing history and analytics placed on the user's computer.

63. Based upon the review of Defendant's Website, it is clear that, when a user accesses Defendant's Website, the Defendant installs software onto the user's computer. It is clear that the Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

64. As such, through its Website, Defendant has committed a trespass against the Plaintiff since the Website places software on the Plaintiff's personal computer without Plaintiff's consent.

**COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

65. Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-58 above.

**Requirement for Effective Communication**

66. It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

67. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68. Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely

manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70. Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Sporting and Entertainment Venues are (each) a *Place of Public Accommodation***

71. By virtue of the fact that each of the sporting and entertainment venues which are serviced through Defendant's Website are open to the public to allow the general public to be entertained and to enjoy the sporting and entertainment events, each sporting and entertainment venue is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §§s 12181(7)(D) & (C). The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

72. The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and choose a sporting or entertainment event at sporting and entertainment venues, the visually impaired have no access to the goods and services of those sporting and entertainment venues, each of which is a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

73. Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[12]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

74. District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Andres Gomez v. Bang & Olufsen Am., Inc.*, No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

75. The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial*

---

[12] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

*Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

76. The Website is a *Place of Public Accommodation* under pursuant to 42 U.S.C. §§s 12181(7)(D) & (C) as it serves as an integral part of the sporting and entertainment venues by providing the public information on the schedule of sporting and entertainment events, and the ability to view each venue's seating chart and to purchase available seats within those venue for specific events and performances, which provides the public the ability to determine if they wish to physically patronize those sporting and entertainment venues.

77. The Website is also a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(E) as the public is able to purchase gift cards and tickets to various sporting and entertainment events online through the Website (which meets the definition of 'sales establishment').

78. Pursuant to 42 U.S.C. §§s 12181(7)(D), (C), & (E) Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.stubhub.com Website, as defined within §§s 12181(7)(D), (C), & (E), such that Defendant is subject to the ADA.

79. It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

80. The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[13] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[14] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

81. Recent case law supports that the intangible barriers presented within Defendant's Website are violative of the ADA. In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[15], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that

[13] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[14] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

[15] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

82. At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Plaintiff's injury is real, has occurred and is continuing. Plaintiff's injury will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

83. Recent Case law supports the Plaintiffs position, that companies which that have not fully updated their websites so that they are accessible to visually impaired individuals are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

84. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

85. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or

accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

86. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

87. As a result of the inaccessibility of Defendant's Website, visually impaired individuals are denied full and equal access to sporting and entertainment venues as Defendant has made available to the public through the information provided on its Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

88. Types of website programming errors include (but are not limited to) *(i) Programming Error Types* ("PETs"), which are easily identifiable and correctable, *(ii) Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible, and *(iii)* Design Errors (DE's) that create empty headings and text fields that create confusion for a user that rely on the 'TAB' key to navigate a web page.

89. A sampling review of just part of the revealed that the Website is not functional for users who are visually impaired. The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

90. Further, the Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

91. More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

92. Further, the Website does not offer include the universal symbol for the disabled[16] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

93. There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither

---

[16]  ™, or HTML "Accessibility" link for those individuals who are visually impaired

fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

94. The Defendant has violated the ADA (and continue to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Auxiliary Aids and Services. These violations within the Website are ongoing.

**Violations of the ADA**

95. As a result of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

96. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.stubhub.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.stubhub.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the

information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of obtaining formation regarding the various sporting and entertainment venue's schedule of sporting and entertainment events and of purchasing tickets to those events online. During that time period prior to the Website being designed to permit individuals with visual impairments to effectively communicate, requiring Defendants to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and services made available to the public.

97. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant.

## COUNT II – TRESPASS

98. Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–64 above.

99. Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's www.stubhub.com website. Plaintiff's personal information has suffered a trespass due to the employment of

software analytics by Defendant, which are present on its Website, which the Plaintiff has navigated.

100. Plaintiff was unaware that Defendant's Website was placing software on his computer due to his inability to effectively communicate with its Website.

101. Plaintiff did not consent to the placement of software on his personal computer; therefore Defendant has committed a trespass against Plaintiff.

102. By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

103. Defendant's installation, operation, and execution of software on Plaintiff's computer has impaired the condition and value of the Plaintiff's computer.

104. At the Website location (https://www.stubhub.com/legal/?section=pp) the Defendant states the following:

**Collection**

> "We collect personal information from you and the devices (including mobile devices) you use to access or use our Services."

**Personal information we collect automatically when you use our services**

> "We also collect information about your interaction with our sites and Services, advertisements (Marketplace Services only), mobile notifications or e-mail communications. This is typically information we receive from your computer or other devices, including your mobile devices."

**Personal information we collect using cookies, web beacons and similar technologies**

> "We use cookies, web beacons, unique identifiers, and similar technologies … We collect information about the pages you view, the links you click and other actions you take on our Services, or within our advertising or email content."

105. As a direct and proximate result of Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, Defendant has injured and impaired on the condition and value of the Plaintiff's computer as follows:

a) By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b) By infringing on Plaintiff's right to exclude others from his computer;

c) By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

d) By compromising the integrity, security, and ownership of Plaintiff's computer; and

e) By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

106. For all of the foregoing, the Plaintiff has no adequate remedy at law.

**DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant StubHub, Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its Website to remove barriers in order that individuals with visual disabilities can

access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[17] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.stubhub.com website;

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendant to evaluate their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

---

[17]

g) The Court enter an Order directing Defendant to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

h) The Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

i) The Court to award injunctive and equitable relief as applicable, including:

   i. prohibiting Defendant from engaging in the acts alleged above;

   ii. requiring Defendant to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendant's placement of software on their computer(s); and

   iii. requiring Defendant to provide Plaintiff reasonable means to decline participation in Defendant's placement of software on his computer;

j) The Court award damages in an amount to be determined at trial;

k) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees;

l) As to the count of trespass, the Court to award Plaintiff other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from

engaging in the conduct and practices of trespass as complained of herein; and

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 31st day of August, 2017.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*